# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.A., | Case No. 1:25-cv-01782-JLT-SAB-HC |
| Petitioner, | FINDINGS AND RECOMMENDATION TO GRANT PRELIMINARY INJUNCTION AND RELEASE PETITIONER |
| v. | |
| TONYA ANDREWS, et al., | (ECF No. 2) |
| Respondents. | ORDER GRANTING PETITIONER'S MOTION TO PROCEED VIA PSEUDONYM |
| | (ECF No. 3) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**I.**

**BACKGROUND**

Petitioner is a citizen of Syria. Petitioner fled Syria because of persecution he suffered on account of his political opinion and sexual orientation. On or around June 27, 2024, Petitioner presented himself at the Mexico/U.S. border with the intention of seeking asylum and was immediately placed in immigration custody. (ECF No. 2-1 at 2.) Petitioner was detained for nine days and then transferred to a detention facility for two months. In September 2024, the Department of Homeland Security ("DHS") released Petitioner and took him on a plane to Petitioner's destination, Fresno, where Petitioner had a cousin. DHS did not require Petitioner to post a bond and did not give Petitioner any instructions. (ECF No. 2-1 at 2.)

1

1    Petitioner did not know what to do to follow up on his case, so he went to the U.S.
2  Immigration and Customs Enforcement ("ICE") office in Fresno to report. Officers added an
3  application to Petitioner's phone, and Petitioner was required to take a photo every week, answer
4  video calls from Intensive Supervision Appearance Program ("ISAP") officers, submit to home
5  visits, and report in person to ISAP and ICE offices. A few times a message would come to
6  Petitioner's phone to take a picture at 7 a.m., but Petitioner was still asleep and did not see the
7  messages. Officers would call Petitioner, and Petitioner would take the picture. Petitioner never
8  missed an in-person appointment. One time an officer informed Petitioner that he missed a home
9  visit. Petitioner explained that he did not know the exact time of the visit because they did not
10 have a translator. At the time of the missed home visit, Petitioner was praying at a mosque a few
11 blocks from his house. Petitioner spoke with his case manager, who said it would be okay.
12 Petitioner never received any formal warnings or notices of noncompliance. (ECF No. 2-1 at 3.)

13   Petitioner retained an immigration attorney and filed his asylum application in November
14 2024. DHS granted Petitioner employment authorization. On May 29, 2025, Petitioner was
15 arrested at an ICE appointment. Officers told Petitioner that he would be detained for his credible
16 fear interview and then released. However, Petitioner was taken to the Golden State Detention
17 Facility, where he has been detained ever since. (ECF No. 2-1 at 3.) According to the I–213
18 Narrative,[1] Petitioner was taken into custody "due to his mandatory detention based on new DHS
19 guidance." (ECF No. 2-3 at 3.)

20   On June 22, 2025, Petitioner underwent a credible fear interview and received a positive
21 determination. (ECF No. 13-1 at 2.) On June 25,[2] 2025, DHS issued a notice to appear ("NTA")
22 charging Petitioner as removable pursuant to sections 212(a)(7)(A)(i)(I) and 212(a)(6)(A)(i) of
23 the Immigration and Nationality Act ("INA"). (ECF No. 2-5 at 2.) Currently, an individual
24 merits hearing is scheduled for January 7, 2026. (ECF No. 13-1 at 3.)

---

[1] "A Form I-213 is 'a recorded recollection of a[n INS agent's] conversation with the alien' which 'border agents routinely complete after interviewing aliens.'" Smith v. Garland, 103 F.4th 663, 665 (9th Cir. 2024) (quoting Espinoza v. INS, 45 F.3d 308, 310 & n.1 (9th Cir. 1995)).

[2] Petitioner's immigration attorney filed a declaration stating that on June 21, 2025 the government filed an NTA with the immigration court. (ECF No. 13-1 at 2.) However, attached as an exhibit to the motion for TRO is a copy of an NTA that is dated June 25, 2025. (ECF No. 2-5 at 2.)

1  On July 10, 2025, Petitioner's immigration attorney filed a formal request for parole with ICE on behalf of the Petitioner. After receiving no response to the initial request, counsel filed a second request for parole with ICE on July 28, 2025. As of December 29, 2025, ICE has not issued a decision or response regarding these requests. (ECF No. 13-1 at 2.) During an immigration court hearing on October 22, 2025, Petitioner requested a bond hearing. The immigration judge ("IJ") "stated that she did not have jurisdiction to grant bond and that ICE was the sole legal entity with the authority to grant the Petitioner parole." (Id. at 3.)

On December 8, 2025, Petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order ("TRO") challenging his detention on procedural and substantive due process grounds. (ECF Nos. 1, 2.) On December 10, 2025, the Court converted the motion for TRO to a motion for preliminary injunction and referred the matter to the undersigned. (ECF No. 7.) Respondents filed an opposition, and Petitioner filed a reply. (ECF Nos. 12, 13.)

**II.**

**DISCUSSION**

**A. Motion to Proceed via Pseudonym**

Rule 10 of the Federal Rules of Civil Procedure requires that every complaint must include the name of all parties. Fed. R. Civ. P. 10(a). Rule 17 further provides that "[a]n action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). The normal presumption is that the parties will use their real names, which is "loosely related" to the public's right to open courts and the rights of individuals to confront their accusers. Doe v. Kamehameha Schools, 596 F.3d 1036, 1042 (9th Cir. 2010). However, courts have allowed a party to proceed in anonymity where special circumstances justify the secrecy. Does I thru XXIII v. Advanced Textile Corp., 214 F.3d 1058, 1067 (9th Cir. 2000). In the Ninth Circuit, a party may proceed with the use of a pseudonym "in the 'unusual case' when nondisclosure of the party's identity 'is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment.'" Advanced Textile Corp., 214 F.3d at 1067–68 (alteration in original) (quoting United States v. Doe, 655 F.2d 920, 922 n.1 (9th Cir. 1981)). The Ninth Circuit has held that "a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's

need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." Advanced Textile Corp., 214 F.3d at 1068.

Courts have generally allowed a party to proceed with anonymity in three circumstances: (1) "when identification creates a risk of retaliatory physical or mental harm"; (2) "when anonymity is necessary 'to preserve privacy in a matter of sensitive and highly personal nature'"; and (3) "when the anonymous party is 'compelled to admit [his or her] intention to engage in illegal conduct, thereby risking criminal prosecution[.]'" Advanced Textile Corp., 214 F.3d at 1068 (first alteration in original) (internal citations omitted). The Ninth Circuit has held that where the use of a pseudonym is used to shield the party from retaliation, the district court should evaluate the following factors: (1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's fears; and (3) the anonymous party's vulnerability to such retaliation. Advanced Textile Corp., 214 F.3d at 1068 (citations omitted).

Here, Petitioner requests to be permitted to proceed under his initials "[g]iven the risk to A.A. and his family of harassment and retaliation." (ECF No. 3 at 1.) "A.A. has a pending asylum claim based on harm and mistreatment he experienced in Syria because of his sexual orientation and political opinion. Additionally, litigation may require disclosure of A.A.'s private mental and physical health information. Such health information is highly personal, and disclosure of such information could lead to stigma and further harm for A.A." (ECF No. 3 at 2.)

Courts have granted motions to file pseudonymously based on the petitioners' fears of persecution and retaliation should their identities be revealed. See, e.g., Doe v. Becerra, 732 F. Supp. 3d 1071, 1091 (N.D. Cal. 2024) ("Given the circumstances of Mr. Doe's petition and his allegations that he will face torture or death if he returns to Mexico, the Court previously granted Mr. Doe's motions to proceed under pseudonym[.]"); E.O.P. v. Andrews, No. 1:25-cv-00721-SKO (HC), 2025 WL 1735396, at *1 (E.D. Cal. June 23, 2025); Doe v. Wofford, No. 1:24-cv-00943-EPG-HC, 2025 WL 1305859, at *4 (E.D. Cal. May 6, 2025); A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 871334, at *1 (E.D. Cal. Mar. 19, 2025).

Based on the Court's review of the severity of the harm, the reasonableness of the Petitioner's proffered fears, and Petitioner's vulnerability to retaliation, the Court finds that the

need for anonymity in this case outweighs countervailing considerations. See Kamehameha Schools, 596 F.3d at 1042. Accordingly, Petitioner's motion to proceed via pseudonym is granted.

**B. Motion for Preliminary Injunction**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 2 (2008) (citations omitted).

> Under the "sliding scale" variant of the *Winter* standard, "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied."

All. for the Wild Rockies v. Pena, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting Shell Offshore, Inc. v. Greenpeace, Inc., 709 F.3d 1281, 1291 (9th Cir. 2013)). "A preliminary injunction is an extraordinary remedy never awarded as of right." Winter, 555 U.S. at 24 (citation omitted). An injunction may only be awarded upon a clear showing that the Petitioner is entitled to relief. Winter, 555 U.S. at 22 (citation omitted).

1. Likelihood of Success on the Merits

"Likelihood of success on the merits is a threshold inquiry and is the most important factor." Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020) (citing Edge v. City of Everett, 929 F.3d 657, 663 (9th Cir. 2019)).

**a. Statutory Framework**

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection

A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Subsection A is the default detention statute for noncitizens in removal proceedings and applies to noncitizens '[e]xcept as provided in [Subsection C].'"[3] Avilez, 69 F.4th at 529 (alterations in original) (quoting 8 U.S.C. § 1226(a)). "[D]etention under Subsection A is discretionary" and "provides for release on bond or conditional parole." Avilez, 69 F.4th at 529. "When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination," and the noncitizen "will be released if he 'demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.'" Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022) (quoting 8 C.F.R. § 236.1(c)(8)).

"[A]n alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1225(a)(1)). "Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law." Jennings, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(3)). "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." Jennings, 583 U.S. at 287. "Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens." Id.

"Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation. Section 1225(b)(1) also applies to certain other aliens designated by the Attorney General in his discretion." Jennings, 583 U.S. at 287 (citations omitted). "Aliens covered by § 1225(b)(1) are normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." Id. (quoting 8 U.S.C. § 1225(b)(1)(A)(i)). "But if a § 1225(b)(1) alien 'indicates either an intention to apply for asylum ... or a fear of persecution,' then that alien is referred for an asylum interview." Jennings, 583

---

[3] Subsection C, which is not at issue here, "provides for the detention of 'criminal aliens' and states that '[t]he Attorney General shall take into custody any alien who' is deportable or inadmissible based on a qualifying, enumerated offense." Avilez, 69 F.4th at 530 (alteration in original) (quoting 8 U.S.C. § 1226(c)).

6

U.S. at 287 (quoting 8 U.S.C. § 1225(b)(1)(A)(ii)). "If an immigration officer determines after that interview that the alien has a credible fear of persecution, 'the alien shall be detained for further consideration of the application for asylum.'" Jennings, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)).

Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Thus, "[a]ll applicants for admission who are not processed for expedited removal [pursuant to § 1225(b)(1)] are placed in regular removal proceedings under § 1225(b)(2)(A). That process generally entails a hearing before an immigration judge pursuant to § 1229a." Innovation Law Lab v. McAleenan, 924 F.3d 503, 507 (9th Cir. 2019).

"Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" Jennings, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)) (citing 8 C.F.R. §§ 212.5(b), 235.3 (2017)). "Such parole, however, 'shall not be regarded as an admission of the alien.'" Jennings, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)). "Instead, when the purpose of the parole has been served, 'the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" Jennings, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

### b. Applicability of 8 U.S.C. § 1225(b)

Petitioner contends that the "mandatory detention provision of 8 U.S.C. § 1225(b) is inapplicable" because "[a]s an individual who was released by the Department of Homeland Security ('DHS') on a parole and order of supervision and has since resided in the United States, he is no longer 'seeking admission' within the meaning of that provision." (ECF No. 13 at 2.) Petitioner argues that "the government's contrary position that 8 U.S.C. § 1225(b) categorically authorizes mandatory detention for all noncitizens who were not lawfully admitted but have been

1 present in the country after being released has been overwhelmingly rejected by district courts
2 nationwide." (ECF No. 13 at 2 (citing Salcedo Aceros v Kaiser, 2025 WL 2637503, at 8 (N.D.
3 Cal. Sept. 12, 2025)).) Respondents assert that the "fact that the petitioner is an applicant for
4 admission resolves the dispute in this case because applicants for admission must be detained
5 and they are not entitled to bond hearings." (ECF No. 12 at 2.)

6 Here, Petitioner is "[i]n removal proceedings under section 240 of the Immigration and
7 Nationality Act." (ECF No. 2-5 at 2.) The NTA also indicates that the section 235(b)(1)
8 expedited removal order was vacated pursuant to 8 C.F.R. § 208.30. (Id.) "[T]he government
9 cannot switch tracks and subject Petitioner[] to mandatory detention under section 1225(b)(2)
10 when the government has instead placed Petitioner[] in removal proceedings under section 1229a
11 and released [him] on [his] own recognizance under section 1226(a)." Valencia Zapata v. Kaiser,
12 No. 25-CV-07492-RFL, --- F. Supp. 3d ----, 2025 WL 2741654, at *9 (N.D. Cal. Sept. 26, 2025),
13 appeal filed, No. 25-7472 (9th Cir. filed Nov. 26, 2025). Accord Souza v. Robbins, No. 1:25-
14 CV-01597-DJC-JDP, 2025 WL 3263897, at *2 (E.D. Cal. Nov. 23, 2025) (finding government
15 cannot "'switch tracks' and subject a petitioner to mandatory detention under section 1225(b)(2)
16 where it has placed a petitioner in removal proceedings under section 1229a and released her on
17 her own recognizance under section 1226(a)" (citing Valencia Zapata, 2025 WL 2741654, at
18 *9)).

19 "District courts around the country have rejected the government's position that section
20 1225(b)(2) permits it to pursue mandatory detention against noncitizens who have not been
21 lawfully admitted but have been present in the country for years." Valencia Zapata 2025 WL
22 2741654, at *10 (citing Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL
23 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases)). "Here in the Eastern District of
24 California, recent decisions have largely rejected the government's interpretation of Section
25 1225(b)(2) as applicable to all 'applicants for admission.'" Valencia v. Chestnut, No. 1:25-cv-
26 01550 WBS JDP, 2025 WL 3205133, at *2 (E.D. Cal. Nov. 17, 2025) (collecting cases). Based
27 on the foregoing, the Court recommends finding that Petitioner likely to succeed in showing that
28 he is not subject to mandatory detention under 8 U.S.C. § 1225(b).

      **c. Due Process**

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that she will be re-detained only if she violates the conditions of her release." Garro Pinchi v. Noem, No. 25-CV-05632-PCP, --- F. Supp. 3d. ----, 2025 WL 3691938, at *30 (N.D. Cal. Dec. 19, 2025) (citing Morrissey v. Brewer, 408 U.S. 471, 482 (1972)). "Other courts, including this Court, have held similarly." J.E.H.G. v. Chestnut, No. 1:25-CV-01673-JLT-SKO, 2025 WL 3523108, at *10 (E.D. Cal. Dec. 9, 2025) (citing Doe v. Becerra, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025)). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). Regardless of whether mandatory detention under § 1225(b) is facially constitutional, and "[e]ven assuming Respondents are correct that § 1225(b) is the applicable detention authority for all 'applicants for admission,' Respondents fail to contend with the liberty interest created by the fact that the Petitioner in this case was released on recognizance[.]" J.E.H.G., 2025 WL 3523108, at *10. See Rocha Chavarria v. Chestnut, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025) ("Many district courts in the Ninth Circuit have found that non-citizens paroled into the United States pursuant to § 1182(d)(5) have a liberty interest in their continued release, entitling them to certain due process protections, the extent of which are determined by applying the test provided in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).").

"Thus, the Court must evaluate the three-part test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 334-335 (1976), to determine whether the procedures (or lack thereof) that have been applied to Petitioner are sufficient to protect the liberty interest at issue." J.E.H.G., 2025 WL 3523108, at *11.

///

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

As to private interest, it "is beyond dispute" that Petitioner's interest here is "fundamental." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "Turning to the second factor, the risk of erroneous deprivation of Petitioner's liberty is high where, as here, '[the petitioner] has not received [and will not receive] any bond or custody redetermination hearing.'" Kakkar v. Chestnut, No. 1:25-CV-1627 JLT SAB, 2025 WL 3638298, at *7 (E.D. Cal. Dec. 15, 2025) (alterations in original) (quoting A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025)). "Finally, as other courts have done, this Court concludes that the government's interest in detaining Petitioner without proper process is slight." J.E.H.G., 2025 WL 3523108, at *12. Accordingly, the Mathews factors weigh in favor of a bond hearing.

Based on the foregoing, the Court recommends finding that Petitioner likely to succeed on the merits of his claim that he has a protected liberty interest in remaining out of custody and that his re-detention without a bond hearing violates due process.

2. Irreparable Harm

In order to establish that preliminary injunctive relief should be granted, Petitioner must "demonstrate that irreparable injury is *likely* in the absence of an injunction." Winter, 555 U.S. at 22. "Deprivation of physical liberty by detention constitutes irreparable harm," Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018), and the Ninth Circuit has recognized "the irreparable harms imposed on anyone subject to immigration detention," such as "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose

parents are detained," Hernandez v. Sessions, 872 F.3d 976, 995 (9th Cir. 2017). Accordingly, the Court recommends finding that Petitioner has demonstrated that irreparable harm is likely in the absence of an injunction.

        3. <u>Balance of Equities and Public Interest</u>

"Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest. These factors merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009). "'[T]he public has a strong interest in upholding procedural protections against unlawful detention,' and the Ninth Circuit has recognized that '[t]he costs to the public of immigration detention are "staggering[.]"'" Jorge M. F. v. Wilkinson, No. 21-CV-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (second alteration in original) (first quoting Ortiz Vargas v. Jennings, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020); then quoting Hernandez, 872 F.3d at 996). Although the government has a strong interest in enforcing immigration laws, the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations," Zepeda v. U.S. Immigr. & Nat. Serv., 753 F.2d 719, 727 (9th Cir. 1983), and the government's immigration enforcement interests are not undermined because Petitioner remains in removal proceedings. Accordingly, the Court recommends finding that the balance of equities and public interest weigh in favor of a preliminary injunction.

        4. <u>Conclusion</u>

Based on the foregoing, the Court recommends finding that Petitioner is likely to succeed on the merits of his claim that his re-detention without a hearing violates due process, irreparable injury is likely in the absence of an injunction, and the balance of equities and public interest weigh in favor of a preliminary injunction.

"The 'purpose of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits.'" Boardman v. Pac. Seafood Grp., 822 F.3d 1011, 1024 (9th Cir. 2016) (quoting Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1023 (9th Cir. 2009)). The Court considers whether a pre-deprivation or post-deprivation bond hearing is

appropriate based on the facts of this case.

> The Supreme Court has held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). However, the Court also recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. *Id.* at 128 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ"). The rapidly developing caselaw on this subject gives limited guidance as to where this line should be drawn. Some courts that have addressed detention-related habeas petitions brought by persons released with enhanced supervision conditions have required pre-deprivation process, but in somewhat different circumstances. In *E.A.T.-B. v. Wamsley*, No. C25-1192-KKE, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025), the district court ordered the release of a petitioner arrested by ICE immediately after appearing in immigration court. That court agreed with the petitioner that ICE's post hoc explanation that violations warranted his detention was pretextual, given that ICE first became aware of petitioner's alleged violations a few hours before his immigration hearing, DHS did not raise those violations at the hearing or argue the petitioner should be detained for any reason, and the petitioner was then provided multiple, inconsistent justifications for his arrest. *Id*. In *Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2230521, at *7 (E.D. Cal. Aug. 4, 2025), converted to preliminary injunction sub nom, 2025 WL 2411010, at *1 (E.D. Cal. Aug. 20, 2025), the court ordered immediate release of in immigration detainee who had been in compliance with his conditions of release, even though he had incurred a misdemeanor arrest while on parole, in part because no charges were ever filed.
>
> In contrast, this Court ordered a parole revocation hearing in *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025), where the petitioner's records indicated numerous violations. Though Martinez Hernandez offered explanations for the violations and there was a dispute of fact as to whether the violations occurred, ICE's reliance upon those violations was "not obviously pretexual." *Id*. at * 12 ("If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight."). As this Court noted in *Martinez Hernandez*:
>
>> In similar circumstances, courts have refused to release the petitioners but have ordered timely bond hearings. *Carballo v. Andrews*, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025), citing *Perera v. Jennings*, et. al, No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021); *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at *6 (N.D. Cal. Mar. 31, 2023). "[A]llowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025). Thus, the Court concludes that prompt, post-deprivation process is required here.
>
> *Id*.

J.E.H.G., 2025 WL 3523108, at *11–12.

1   Here, although there are indications of some minor reporting violations, DHS detained
2   Petitioner "based on new DHS guidance." (ECF No. 2-3 at 3.) Respondents do not argue that
3   Petitioner's re-detention was based on any violations of his conditions of release or that
4   Petitioner is now considered a flight risk or danger to the community. Accordingly, the Court
5   recommends that a pre-deprivation hearing is appropriate based on the facts of this case, and that
6   "the burden at any such hearing [be placed] on the government to demonstrate to a neutral
7   decisionmaker by clear and convincing evidence that re-detention is necessary to prevent danger
8   to the community or flight." J.E.H.G., 2025 WL 3523108, at *14 (citing Pinchi v. Noem, 792 F.
9   Supp. 3d 1025, 2025 WL 2084921, at *7 (N.D. Cal. 2025)). See J.E.H.G., 2025 WL 3523108, at
10  *14 ("[T]he immigrant's initial release reflected a determination by the government that the
11  noncitizen is not a danger to the community or a flight risk. Since it is the government that
12  initiated re-detention, it follows that the government should be required to bear the burden of
13  providing a justification for the re-detention.").

14  **C. Bond**

15  "Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive
16  relief 'only if the movant gives security in an amount that the court considers proper to pay the
17  costs and damages sustained by any party found to have been wrongfully enjoined or
18  restrained.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P.
19  65(c)). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with
20  discretion as to the amount of security required, *if any*.'" Id. (some internal quotation marks
21  omitted) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular,
22  '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic
23  likelihood of harm to the defendant from enjoining his or her conduct.'" Johnson, 572 F.3d at
24  1086 (quoting Jorgensen, 320 F.3d at 919). The Court finds that no security is required here. See
25  Lepe v. Andrews, No. 1:25-cv-01163-KES-SKO (HC), 2025 WL 2716910, at *10 (E.D. Cal.
26  Sept. 23, 2025) ("The security bond requirement of Federal Rule of Civil Procedure 65(c) is
27  waived. Courts regularly waive security in cases like this, and the government has not
28  established a need to impose a security bond.").

13

## III.

## RECOMMENDATION & ORDER

Based on the foregoing, the Court HEREBY RECOMMENDS that:

1. Petitioner's motion for preliminary injunction (ECF No. 2) be GRANTED.

2. Respondents be directed to immediately release Petitioner on the conditions of his prior release from custody until DHS proves to a neutral adjudicator by clear and convincing evidence that re-detention is necessary to prevent danger to the community or flight.

Further, the Court HEREBY ORDERS that Petitioner's motion to proceed via pseudonym (ECF No. 3) is GRANTED.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections with the Court, **limited to fifteen (15) pages in length, including any exhibits**. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned District Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **January 6, 2026**

STANLEY A. BOONE
United States Magistrate Judge